376 So.2d 378 (1979)
THE FLORIDA BAR, Petitioner,
v.
Rosemary W. FURMAN, Etc., Respondent.
No. 51226.
Supreme Court of Florida.
May 10, 1979.
On Rehearing and Opinion Clarified November 1, 1979.
Bernard H. Dempsey, Jr., Chairman, Standing Committee on Unauthorized Practice of Law, Orlando, Lacy Mahon, Jr., Bar Counsel, Jacksonville, and H. Glenn Boggs, II and John A. Weiss, Asst. Staff Counsels, Tallahassee, for petitioner.
*379 Albert J. Hadeed, Southern Legal Counsel, Inc., Gainesville, and Alan B. Morrison, pro hac vice, Washington, D.C., for respondent.
William H. Adams, III, Jacksonville, for amicus curiae.
PER CURIAM.
The Florida Bar has petitioned this Court to enjoin Rosemary W. Furman, d/b/a Northside Secretarial Service, from unauthorized practice of law in the State of Florida. Our jurisdiction to rule in this matter is provided by article V, section 15 of the Florida Constitution and by The Florida Bar Integration Rule, article XVI. We find the activities of the respondent to constitute the practice of law and permanently enjoin her from the further unauthorized practice of law.
The Florida Bar alleged, through an amended petition dated September 23, 1977, that Furman, a non-lawyer, engaged in the unauthorized practice of law by giving legal advice and by rendering legal services in connection with marriage dissolutions and adoptions in the years 1976 and 1977. The bar specifically alleges that Furman performed legal services for at least seven customers by soliciting information from them and preparing pleadings in violation of Florida law. The bar further contends that through advertising in the Jacksonville Journal, a newspaper of general circulation, Furman held herself out to the public as having legal expertise in Florida family law and sold "do-it-yourself divorce kits." The bar does not contend that Furman held herself out to be a lawyer, that her customers suffered any harm as a result of the services rendered, or that she has failed to perform the services for which she was paid.
In describing her activities, Furman states that she does not give legal advice, that she does prepare pleadings that meet the desires of her clients, that she charges no more than $50 for her services, and that her assistance to customers is in aid of their obtaining self-representative relief from the courts. In general, the respondent alleges as a defense that the ruling of this court in Florida Bar v. Brumbaugh, 355 So.2d 1186 (Fla. 1978), violates the first amendment to the United States Constitution by restricting her right to disseminate and the right of her customers to receive information which would allow indigent litigants access to the state's domestic relations courts. She alleges that our holding in Brumbaugh is so narrow that it deprives citizens who are indigent of equal protection of the laws as provided by the Florida and United States constitutions.
When this case was at issue, we referred it to retired Circuit Judge P.B. Revels of the Seventh Judicial Circuit, one of Florida's most experienced trial judges, to serve as referee. The referee has filed his report which, in pertinent part, indicates:
A. That the Respondent, Rosemary W. Furman, d/b/a Northside Secretarial Service, is the sole proprietor and owner of said secretarial service. The Northside Secretarial Service has never registered under the fictitious name law.
B. Respondent has never received any legal training or education; is not now nor ever been a licensed attorney of law of the State of Florida or elsewhere; that she is not now and never has been a member of The Florida Bar.
* * * * * *
D. That the Respondent under the guise of secretarial services for a fee prepares all papers considered by her to be necessary for the filing and securing a dissolution of marriage, as well as detailed instructions as to how the papers should be filed, service secured, hearings set and a briefing session as to the questions and answers to be offered at the trial of the case before the Court and for entry of Final Judgment of Dissolution.
E. The Respondent admitted, when a person comes to her place of business, they state they want to get a divorce or they want her to help them get a divorce, although many of the people deposed insisted that they only asked that she type *380 papers to enable them to obtain the divorce. So after some discussion, the customer is provided with the appropriate intake sheet for the facts listed at the first visit  either Respondent's Exhibit 11 or 12. In addition to the intake sheet the Respondent furnishes papers outlining the legal steps, the law and the procedures, as shown by Respondent's Exhibits 13, 14 and 15, advising them to read the matter and it will help them in filling out the intake sheet.
F. The Respondent admits that the customer returns with the intake sheet not completed, because the people are unfamiliar with the legal terms and some are illiterate and, of course, she then proceeds to ask questions to complete the intake sheet for preparing the Petition for Dissolution of Marriage. Then after she types the Petition for Dissolution of Marriage, she advises the customer to take the papers for filing to the Office of the Clerk of Circuit Court, and Respondent follows the progress of the case every step of the way until it is at issue. She then notifies the customer to come in for a briefing session preferably the day before the date set for trial. In the course of briefing Respondent furnishes the customer with a diagram of the Court chambers and where to find the Judge to which that particular case has been assigned. A copy of the diagram of chambers that she furnishes to the customer is shown by Respondent's Exhibit 10. She also explains the full procedure that will take place before the Judge, including the questions the customer should ask the customer and the resident witness. A copy of same is shown by Respondent's Exhibit 20. The facts in the record of this case establish very clearly that the Respondent performs every essential step in the legal proceedings to obtain a dissolution of marriage, except taking the papers and filing them in the Clerk's office and going with the customer to the final hearing and interrogating the witness.
* * * * * *
H. Respondent admitted that she could not follow the guidelines as set forth in the Florida Bar v. Brumbaugh, Supreme Court Opinion, for the reason that the customers who come to obtain her services are not capable for various and sundry reasons, mainly not being familiar with legal terminology or illiterate, and were unable to write out the necessary information. Therefore, she was compelled to ask questions and hold conferences with her customers.
I. Pre-trial Stipulation, Joint Evidentiary Exhibit 1, briefly enumerates the factual situation in each of the cases which I believe I can state the substance of the Stipulation, even though there are some varying circumstances in each case, for the purpose of my findings without quoting the Stipulation in full. The cases involved were Green vs Green, Ammons vs Ammons, Kirkby-Petition for Adoption, Howland vs Howland, Mayden vs Mayden, Holmes vs Holmes, and Touchton vs Touchton. The substance of this Stipulation is as follows:
The factual information contained in the pleadings was obtained by Respondent from the customer as a result of oral questions asked by Respondent and answered by the customer, which information was written upon Respondent's standardized intake sheet. Respondent by both oral and written instructions informed the customer as to the procedures to be followed in filing the pleadings and in processing the same to final hearing. Respondent specifically informed customers that she was not an attorney nor licensed to practice law in the State of Florida and at no time did the customers believe that the Respondent was an attorney or licensed to practice law. In paragraphs 16 and 17 of said stipulation the parties agreed that the customers did not think or know that they had suffered any damage as a result of Respondent's services; that they did not think that the Respondent gave them legal advice or engaged in legal counseling.
The referee made the following findings:
1. The foregoing facts show by a great weight of the evidence, Rosemary *381 W. Furman, shielded behind the cloak of Northside Secretarial Service, has been engaged in the unauthorized practice of law for approximately three years.
2. That the Opinion in Florida Bar v. Brumbaugh is being interpreted by many as a license to individuals, who are trained and experienced in secretarial work, to practice law. This creates a grave danger to the citizens of Florida.
* * * * * *
11. Rosemary W. Furman should be adjudged guilty of contempt of the Supreme Court of Florida, and permanently enjoined from engaging or pursuing any course of action personally or in her secretarial service that touches or resembles in any way the practice of law. She should be prohibited from typing legal papers of any kind, filling blanks on any legal forms, or giving oral or written advice or directions. The fact she is an expert stenographer does not give her any legal right to engage in divorce and adoption practice anymore than a nurse has the right to set up an office for performing tonsillectomy or appendectomy operations or a dental assistant to do extractions or fill teeth.
The referee's findings must be approved unless they are erroneous or wholly lacking in evidentiary support. Florida Bar v. Wagner, 212 So.2d 770 (Fla. 1968).
We do not write on a clean slate in this case. Last year we took the opportunity to clearly define to non-lawyers the proper realm in which they could operate without engaging in the unauthorized practice of law. In Brumbaugh, we clearly stated what services a similar secretarial business could lawfully perform. We said:
We hold that Ms. Brumbaugh, and others in similar situations, may sell printed material purporting to explain legal practice and procedure to the public in general and she may sell sample legal forms. To this extent we limit our prior holdings in Stupica and American Legal and Business Forms, Inc. Further, we hold that it is not improper for Marilyn Brumbaugh to engage in a secretarial service, typing such forms for her clients, provided that she only copy the information given to her in writing by her clients. In addition, Ms. Brumbaugh may advertise her business activities of providing secretarial and notary services and selling legal forms and general printed information. However, Marilyn Brumbaugh must not, in conjunction with her business, engage in advising clients as to the various remedies available to them, or otherwise assist them in preparing those forms necessary for a dissolution proceeding. More specifically, Marilyn Brumbaugh may not make inquiries nor answer questions from her clients as to the particular forms which might be necessary, how best to fill out such forms, where to properly file such forms, and how to present necessary evidence at the court hearings. Our specific holding with regard to the dissolution of marriage also applies to other unauthorized legal assistance such as the preparation of wills or real estate transaction documents. While Marilyn Brumbaugh may legally sell forms in these areas, and type up instruments which have been completed by clients, she must not engage in personal legal assistance in conjunction with her business activities, including the correction of errors and omissions.
355 So.2d at 1194.
Our directions could not have been clearer.
Before the referee and before this court, Furman admitted that she did not abide by the dictates of Brumbaugh. She says that it is impossible for her to operate her "do-it-yourself divorce kit" business in compliance with this court's ruling in that case. The bar alleges that Furman has engaged in the unauthorized practice of law as previously defined by this court. The referee so found. She so admits. We believe the referee's findings are supported by the evidence.
In other portions of the referee's report, he urges that as part of our disposition in this case we require the bar to conduct a *382 study to determine how to provide effective legal services to the indigent. Without question, it is our responsibility to promote the full availability of legal services. We deem it more appropriate, however, to address this issue in a separate proceeding. By doing so under our supervisory power, we insure a thorough consideration of the overall problem without delaying the present adjudication.
Devising means for providing effective legal services to the indigent and poor is a continuing problem. The Florida Bar has addressed this subject with some success. In spite of the laudable efforts by the bar, however, this record suggests that even more attention needs to be given to this subject.
Therefore, we direct The Florida Bar to begin immediately a study to determine better ways and means of providing legal services to the indigent. We further direct that a report on the findings and conclusions from this study be prepared and filed with this court on or before January 1, 1980, at which time we will examine the problem and consider solutions.
Accordingly, we find that Rosemary Furman, d/b/a Northside Secretarial Service, has been guilty of the unauthorized practice of law by virtue of the activities recited herein and she is hereby permanently enjoined and restrained from further engaging in the unauthorized practice of law in the State of Florida.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ALDERMAN, J., Concurring in part, dissenting in part.
I concur in the revision of the original opinion, but I would also tax the costs of this proceeding against the respondent, Rosemary W. Furman.
The Florida Bar properly brought to the attention of this Court the respondent's unlawful activity. As a result, the respondent has been found guilty of the unauthorized practice of law. There has been no wrong-doing on the part of the Bar. The culprit in this case is Rosemary W. Furman. If she had not violated the law, it would not have been necessary for The Florida Bar to bring this action. The respondent is the guilty party, and she is the one who should pay the costs that were necessarily incurred by The Florida Bar to stop her illegal activity.