616 So.2d 979 (1993)
THE FLORIDA BAR, Petitioner,
v.
Daniel E. SCHRAMEK, etc., Respondent.
No. 77871.
Supreme Court of Florida.
April 15, 1993.
Rehearing Denied June 7, 1993.
Lori Holcomb, Asst. UPL Counsel, Tallahassee, John A. Yanchunis of Blasingame, Forizs & Smiljanich, P.A., and Howard P. Ross of Battaglia, Ross, Hastings & Dicus, St. Petersburg, for petitioner.
Daniel E. Schramek, pro se.
*980 PER CURIAM.
This cause is before the Court on The Florida Bar's petition to enjoin the respondent, Daniel E. Schramek, individually and d/b/a Schramek & Associates and The L.A.W. Clinic, Inc., from the unlicensed practice of law. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed, we find that Schramek not only has engaged in the unlicensed practice of law but also has caused damage to those persons who sought his services and advice. We permanently enjoin him from further unauthorized practice of law and specifically enjoin him from appearing in any court in this State, directly or indirectly, as a spokesperson or representative for litigants in any court proceeding.
The record reflects that Schramek is a Florida resident, who has done business as Schramek & Associates, a business that publishes "kits" used for seeking legal relief, and as The L.A.W. Clinic, Inc. (the Clinic), a Florida corporation, of which Schramek and his wife, Amy, are the sole directors. Neither Schramek nor any employee of Schramek & Associates or the Clinic is licensed to practice law in the State of Florida.
After the Florida Bar petitioned this Court to enjoin Schramek from the unauthorized practice of law, this matter was referred to a referee for hearing and recommendation. The record from that proceeding reflects the following specific incidents in which Schramek engaged in the unauthorized practice of law.

The C.S. Incident
C.S. sought legal advice from several attorneys regarding reduction of his child support payments. He was told by those attorneys that his chances of getting his payments reduced were "slim to none." Subsequent to obtaining that advice, he contacted the Clinic, and Schramek told him that, based on the statutory child support guidelines, he thought C.S. had a "good chance" of having his child support reduced. C.S. then told Schramek to do what was necessary to have his child support payments reduced.
Schramek prepared all papers filed by C.S., including a motion for modification and a motion for a nonjury trial. Additionally, Schramek told C.S. what to take with him and what to do and say at the hearing. In the motion for modification, Schramek included the statutory child support guidelines as a basis for reducing C.S.'s child support. Contrary to Schramek's assertion, the statute governing the child support guidelines specifically states that the guidelines cannot be used as a basis for reducing child support payments. § 61.30(1)(b)1., Fla. Stat. (1989). The motion for child support modification and request for nonjury trial, as drafted, are not included within the forms contained in either the Florida Rules of Civil Procedure or this Court's Approved Simplified Forms for use in family court proceedings. See Rules Regulating The Fla. Bar  Approval of Forms, 581 So.2d 902 (Fla. 1991).
At the hearing on C.S.'s motion, the judge declined to reduce C.S.'s child support payments and ordered C.S. to pay one-third of his former wife's attorney's fees. After the hearing, Schramek told C.S. that he had thirty days in which to file a notice of appeal and that he would be happy to prepare C.S.'s appeal papers. Schramek, in the Clinic's invoice statement, attempted to secure a waiver, disclaimer or limitation of liability regarding his assistance to C.S.[1]
On these facts, the referee found that Schramek had given legal advice to C.S. regarding the effect of Florida's child support guidelines, the procedure for obtaining a reduction in child support payments, the child support hearing, and C.S.'s appeal rights, including available remedies and possible courses of action. The referee additionally found that portions of that advice *981 were incorrect and that C.S., relying on Schramek's incorrect legal advice, was harmed because he was required to pay a portion of his former wife's attorneys' fees in addition to the fee he paid to the Clinic.

The M.M. Incident
M.M. retained the services of Schramek through the Clinic to prepare a living trust. As part of that living trust, Schramek prepared a quitclaim deed to transfer M.M.'s real property to the trust. The forms prepared by Schramek were not included within the forms contained in either the Florida Rules of Civil Procedure or this Court's Approved Simplified Forms. Further, the quitclaim deed was defective. Although the property was initially owned by M.M. and her husband, upon the husband's death, title to the property vested in M.M. alone. In preparing the deed, Schramek failed to recognize that fact and erroneously included a line on the deed which required the signature of M.M.'s deceased husband. When the deed was executed, Schramek signed the deceased husband's name on the deed and then notarized the signature. Consequently, to clear the title to the property after M.M.'s death, her heirs were required to formally probate her estate, which resulted in costs to the estate of at least $6,650.
The referee found that Schramek, in preparing the living trust and related documents, gave legal advice to M.M. regarding the effects of a living trust, failed to properly advise M.M., and failed to complete the transfer of her assets into the trust. Because M.M.'s estate was subjected to probate and additional expenses, her estate was harmed by Schramek's incompetent advice and document preparation. Additionally, costs and expenses were incurred by M.M.'s estate that would have not been necessary if M.M. had received proper advice in creating the living trust.

The V.G. Incident
V.G. retained the services of Schramek through the Clinic to prepare a living trust. Schramek, as part of those services, also prepared a pour-over will, a power of attorney, and a quitclaim deed to convey V.G.'s condominium to the trust. None of these forms were approved forms contained in either the Florida Rules of Civil Procedure or this Court's Approved Simplified Forms.
Some time after Schramek drafted the living trust and prepared the deed, V.G. became incompetent and was placed in a convalescent home. Subsequently, the condominium was put up for sale and a buyer was found. A title company then discovered that the deed had been incorrectly prepared, and the condominium could not be conveyed until a corrective deed was issued. Because V.G. was by that time incompetent and could not execute a corrective deed, the title to the property could not be insured and the buyers purchased other property.
Additionally, the trust had been drafted so that three individuals would serve jointly as successor trustees to V.G. The trust stated that the actions of one trustee were binding on the other two. Consequently, one trustee was able to transfer substantial trust assets to himself. Moreover, no provision was made as to what would happen in the event a co-trustee died, was disqualified, or resigned. Thus, when two of the successor trustees died, it was left to a court to interpret V.G.'s intent.
The referee found that Schramek had given incorrect legal advice to V.G. regarding the living trust and that this incorrect advice resulted in substantial harm to V.G. and her estate.

Franchising the Business of Selling Legal Services to the General Public
Schramek, through the Clinic, entered into an agreement with one Richard Campbell, a nonlawyer, whereby Campbell would set up and run a Pensacola branch office of the Clinic. Under the agreement, the Clinic was to act as a "service distributor" offering "legal services of all kinds" through the Pensacola office. According to Campbell's testimony, the legal services offered were in the areas of landlord/tenant, divorces, living trusts, bankruptcy, and adoptions. Campbell stated that the procedure to be followed under the agreement was that he would obtain information from individuals on an application form prepared by the Clinic, supply that information to the *982 Clinic, and the Clinic, in turn, for a percentage of the fee collected, would prepare legal forms, including forms not approved by this Court. Additionally, Campbell testified that the Clinic provided legal advice regarding the forms and that much of that advice was incorrect and caused harm to patrons of the Pensacola office. For example, in the area of bankruptcy, patrons were told they were entitled to certain exemptions when, in fact, they were not. Campbell testified that so much of the legal advice given by the Clinic was incorrect that he disaffiliated himself from Schramek and the Clinic.

Schramek's Testimony
Although Schramek refused to answer any questions at the hearing before the referee based on his Fifth Amendment right against self-incrimination, he did answer questions during his appearance early in these proceedings before the Unlicensed Practice of Law Committee. During that testimony, Schramek testified that he gave legal assistance only to the extent that he assisted people in filling out forms supplied by this Court and in filing those forms with a court. However, he admitted that those forms, as filed, included his "modifications" and that he also used forms supplied by the secretary of state (to prepare articles of incorporation) and forms prepared by local attorneys (to prepare living trusts), even though none of those forms have been approved by this Court for use by nonlawyers.
Schramek also stated that he gives lectures to the general public on living trusts. In those lectures, he discusses the consequences of estate planning and the tax advantages that exist under certain circumstances. Additionally, because he has made the determination that a living trust is better than a trust directed to individual assets, he advises the public that a living trust is the better alternative. He further admitted that he acts as an advisor and a consultant to persons purchasing his "extended family membership program" when it comes to seeking advice as to how to settle an estate through a living trust agreement. His "trust package" includes a living trust agreement, durable family power of attorney, quitclaim deeds, and a last will and testament.
In addition to the above, Schramek admitted that he has interpreted statutes for clients, that he sometimes calls the judge's office to set hearings, that he often physically takes the forms to the courthouse, and that he assists clients in filing appeals by filing a notice of appeal, by editing and clarifying clients' briefs, and by walking clients through the rules of procedure.
Despite the foregoing testimony, Schramek maintained that he had never "given legal advice" and that, in fact, he did not know the meaning of "giving legal advice" because it had never been defined by the American Bar Association or The Florida Bar.

The Referee's Recommendation
From the foregoing, the referee concluded that Schramek has engaged in the unlicensed practice of law, causing substantial harm to the public. Additionally, the referee concluded that Schramek and the employees of the Clinic should be restrained from such activity in the future and that Schramek and the Clinic should be assessed costs in the amount of $4,932.23.

Issues Raised by Schramek
Schramek objects to the referee's findings and recommendations on the grounds that the referee and this Court are without jurisdiction to hear this matter, that this action violates federal and state antitrust laws and RICO acts, and that the Bar has failed to present evidence of any public harm caused by Schramek's actions.
First, Schramek asserts that this Court is without jurisdiction to hear this cause because he is not a member of The Florida Bar and because this Court's jurisdiction to regulate the practice of law extends only to licensed attorneys. In support of this argument, Schramek quotes article V, section 15, of the Florida Constitution: "The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and discipline of persons admitted."
*983 This issue was resolved more than thirty years ago in State ex rel. The Florida Bar v. Sperry, 140 So.2d 587 (Fla. 1962), vacated on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). In Sperry, we stated that Florida's constitution inherently vests the power in this Court to prevent the practice of law by those not admitted to that practice and that we may enforce that authority through either injunction or contempt proceedings because the unauthorized practice of law constitutes contempt of court. See also The Fla. Bar v. Flowers, 320 So.2d 809 (Fla. 1975) (constitutional authority of this Court to have exclusive jurisdiction to regulate admission to the practice of law necessarily includes the power to prevent the unlicensed practice of law); The Fla. Bar re Adv. Opinion  HRS Nonlawyer Counselor, 518 So.2d 1270 (Fla. 1988) (this Court has exclusive jurisdiction to regulate the admission of persons to the practice of law and the attending power to prevent the unauthorized practice of law). Indeed, the United States Supreme Court recognized this authority in Sperry v. Florida ex rel. The Florida Bar, 373 U.S. 379, 383, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963), when it stated that "Florida has a substantial interest in regulating the practice of law within the State and ... [can] validly prohibit nonlawyers from engaging in [the unlicensed practice of law]."
Second, Schramek contends that this Court is without jurisdiction because the initial judge assigned to act as referee in this cause signed an Order of Recusal in which he disqualified "the Court" from further proceedings in this cause. Schramek claims that, because the term "the Court" encompasses all courts of Florida and not just the initial judge assigned as referee, the referee, in effect, dismissed the Bar's petition against him. We find this argument to be without merit. As the referee who was finally assigned to hear this cause noted regarding this issue, the terms "judge" and "court" are often used interchangeably, and when the initial referee referred to "the Court" in the Order of Recusal, he was referring to himself and not to this Court.
Schramek also contends that this Court is acting unconstitutionally and without jurisdiction in pursuing this matter because this Court has acted to deprive him of his constitutionally protected rights to engage in trade in violation of federal and state RICO and antitrust laws. Again, we find Schramek's contention to be without merit. In recognizing that the Supreme Court of Florida has the exclusive authority to regulate the practice of law in this state, we stated in The Florida Bar v. Brumbaugh, 355 So.2d 1186, 1189 (Fla. 1978):
Because of the natural tendency of all professions to act in their own self interest ... this Court must closely scrutinize all regulations tending to limit competition in the delivery of legal services to the public, and determine whether or not such regulations are truly in the public interest.
However, this Court acts well within its constitutional authority to limit the practice of law by nonlawyers given the significant state interest in protecting the public. As we noted in Sperry, prohibiting the unlicensed practice of law is
not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons... .
140 So.2d at 595. Indeed, given the factual circumstances presented at the hearing in this cause, the activities in which Schramek has been involved constitute exactly the type of incorrect and harmful legal advice that this Court strives to prevent in prohibiting the unlicensed practice of law.
Schramek next states that the Bar has presented no evidence that he engaged in the unlicensed practice of law or that his actions have resulted in any public harm. Without question, this contention is erroneous  the record clearly reflects that Schramek has engaged in the unlicensed practice of law and that such actions have caused substantial public harm.
*984 By his own admission, Schramek modifies forms approved by this Court, uses forms not approved by this Court for use by nonlawyers, and provides legal advice regarding a number of areas, including, but not limited to, living trusts, the transfer of real property, bankruptcy, the formation of corporations, and the appellate process. This Court has specifically determined that each of those activities constitutes the unauthorized practice of law because they require a knowledge of the law greater than that possessed by the average citizen. See The Fla. Bar re Adv. Opinion  Nonlawyer Preparation of Living Trusts, 613 So.2d 426, 18 Fla. L. Weekly S23 (Fla. 1992) (the assembly, drafting, execution, and funding of a living trust document constitutes the practice of law  only a lawyer can make a determination as to a client's need for a living trust and identify the type of living trust most appropriate for the client); Rules Regulating The Fla. Bar  Approval of Forms, 581 So.2d 902 (Fla. 1991) (approved simplified forms are not intended to be used by nonlawyers as a means to practice law or to give legal advice and nonlawyers are prohibited and enjoined from performing functions other than those set forth in rule 10-1.1(b)); The Fla. Bar v. King, 468 So.2d 982 (Fla. 1985) (having direct contact with clients in the nature of consultation, explanation, recommendations, advice, and assistance in the provision, selection, and completion of forms is the unauthorized practice of law); The Fla. Bar v. Valdes, 464 So.2d 1183 (Fla. 1985) (preparation of deeds for individuals other than one's self constitutes the unauthorized practice of law); The Fla. Bar v. Mills, 410 So.2d 498 (Fla. 1982) (giving advice regarding procedures to follow for an appeal constitutes the unauthorized practice of law); The Fla. Bar v. Mills, 398 So.2d 1368 (Fla. 1981) (drafting articles of incorporation is the practice of law); The Fla. Bar v. Town, 174 So.2d 395 (Fla. 1965) (same). Schramek's assertion before the Unlicensed Practice of Law Committee that he has no way of determining what constitutes the unauthorized practice of law is totally without merit given that we have specifically determined that the activities in which he engages do constitute the unauthorized practice of law.
Moreover, the record clearly establishes that the incorrect legal advice provided by Schramek resulted in significant public harm. As noted previously, in V.G.'s estate, Schramek prepared a deed in which he signed a signature for a dead man and then, in turn, notarized that same signature in an attempt to transfer the real property to a living trust. Notably, were Schramek a licensed attorney before this Court in a disciplinary proceeding, that type of conduct would result in his being substantially disciplined, if not disbarred. Equally as important, Schramek was recently found guilty by a jury and convicted of forgery, uttering, and notary fraud because he forged the signature of another individual on a document and notarized that same signature.[2] Further, the testimony of Richard Campbell reflects that Schramek gave incorrect advice and caused harm to those seeking his services in bankruptcy proceedings.
We also take note that Schramek, in providing bankruptcy services, did not make audio records of the conversations between himself and the debtors as required by law. See In re Rishel, 149 B.R. 720 (Bankr. S.D.Fla. 1993). Although the evidence in Rishel was insufficient to prove that Schramek had given legal advice to the person using his services, the bankruptcy court noted that "had the debtor obtained competent legal advice, the debtor could have saved himself hundreds, perhaps thousands, of dollars." Id. Finally, it is clear that Schramek has been giving incorrect legal advice in his lectures to the general public on living trusts. As previously indicated, he discusses in those lectures the consequences of estate planning and the tax advantages that exist under certain circumstances.

*985 The Marina Securities, Inc. and Marina Trust Services, Inc. Issue

In addition to the incidents above, the referee found that Schramek had engaged in the unauthorized practice of law by appearing as the agent of Marina Securities, Inc., and Marina Trust Services, Inc., in litigation before this Court. In The Fla. Bar v. Marina Securities, Inc., 591 So.2d 185 (Fla. 1991), the Florida Bar had initiated an action against those corporations for the unlicensed practice of law. In an answer filed by Schramek as an agent for the corporations, he explained his direct personal involvement in that case by stating:
Marina Trust Services, Inc. (hereinafter Marina Trust) assists clients, as nonlawyers, engaging in limited communications in the completion of legal documents, pursuant to Rule 10-1.1(b) Definition of UPL under the Rules Governing the Unlicensed Practice of Law of the Rules Regulating the Florida Bar. This includes the reasonable elicitation of factual information from clients to complete an application supplied by and for The L.A.W. Clinic, Inc. of St. Petersburg, Florida (hereinafter L.A.W.), under the direction of Daniel E. Schramek. All standard legal documents are prepared exclusively by L.A.W. All fees excepted [sic] from Marina clients are made payable to L.A.W. Marina acts as an agent of L.A.W. under a licensing agreement.

(Emphasis added.) In responding to motions filed by the Bar to strike Schramek's answer and disqualify Schramek from appearing in this matter, Schramek asserted that the corporate entities involved as respondents had appointed him as their agent to act in their behalf and that he was entitled to do so under the authority of section 607.011, Florida Statutes,[3] as construed by this Court in West Stuart Acreage, Inc. v. Hannett, 427 So.2d 323 (Fla. 1983).
Although we denied the Bar's motions in Marina Securities, we did not do so on the grounds asserted by Schramek. Instead, we allowed Schramek to appear because the answer in that proceeding indicated that Schramek was personally and directly involved in the unauthorized practice of law at issue and because striking the pleadings filed by Schramek would have left no answer or response to the Bar's petition, creating a possible due process issue.
Given the nature of an unauthorized practice of law proceeding, we have found it appropriate to give those directly involved in such a proceeding an opportunity to be heard to assure that an individual's due process rights are protected. Interestingly, rather than refuting the unauthorized practice of law charges, Schramek's responsive pleadings in Marina Securities appeared to establish on their face that Schramek was giving legal advice and preparing non-approved forms for customers of the corporate entities involved in that matter.
As a result of our denial of the Bar's motions to strike in Marina Securities, Schramek has claimed the right to practice law without limitation and has threatened suits against the judiciary of this state. In doing so, he has stated to judges that judicial immunity does not apply under these circumstances. See Kerr-McGee Refining Corp. v. Dockside Fueling Co., No. 92-61-CL-42 (Fla. 6th Cir.Ct. 1992). The notice filed by Schramek in Kerr-McGee reads as follows:
COMES NOW, Daniel E. Schramek, and serves notice to all parties that I am authorized to practice law in the State of Florida, without limitations or restrictions, pursuant to the authorization of the Supreme Court of Florida, authorized May 30, 1991. Special Person Number (SPN), as issued by the Clerk of the Court of the Sixth Judicial Circuit, is 01089013.
The Supreme Court's authorization for me to practice law established my right to represent a corporation before the Supreme *986 Court of Florida. The authorization permits [me], pursuant to Construction of Statute Laws, to represent any person as defined by statute, including individuals.
Pursuant to the Constitution of the State of Florida, Article V, Section 15, the Supreme Court of Florida has the "exclusive jurisdiction to regulate the admission of persons to the practice of law."
Pursuant to Florida Statute 454.23, "any person not licensed or otherwise authorized by the Supreme Court of Florida who shall practice law ... shall be guilty of a misdemeanor of the first degree."
Pursuant to Florida Statutes, Volume 1, Title I, Construction of Statutes, Chapter 1, Section 1.01, Definitions, (3) [t]he word "person" includes individuals, children, firms, associations, joint ventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations.
Florida Statute 542.17, further defines "person" to mean any individual, corporation, firm, partnership, limited partnership, incorporated or unincorporated association, professional association, or other legal, commercial, or governmental entity, including the State of Florida, its departments, agencies, political subdivisions, and units of government.
The reason for this Judicial Notice is to clarify the issue of licensed attorneys vs. authorized attorneys. There seems to be a lack of understanding by members of the judiciary, both judges and attorneys on this issue. The Florida Bar has authorization from the Supreme Court to issue licenses for the practice of law and the Supreme court has the exclusive jurisdiction to authorize persons to practice law. Although the Florida Bar has not licensed Daniel E. Schramek to practice law, their licensure is totally irrelevant, since the Florida Supreme Court, having exclusive jurisdiction, has authorized Mr. Schramek to practice law, without limitations or restrictions, in the same capacity as a licensed attorney.
If any member of the judiciary needs further clarification of this issue, then I recommend that you contact the Supreme Court of Florida. If you refuse to acknowledge my authorization to practice law before a Court in this state, and deny due process, deny due diligence, deny access to the court, or deny equal protection of the laws, to those I represent, then this is my official notice to you that I will/pursue appropriate civil and/or criminal actions against you for violation of my guaranteed federal and state civil rights and the violation of the guaranteed federal and state civil rights of those I represent. Be [apprised] of the fact that judicial immunity is no longer a protection for those in the judiciary, pursuant to common law, if they willfully and intentionally violate a person's guaranteed civil rights.
By our ruling in Marina Securities, we in no way authorized Schramek to practice law in this state. His appearance was allowed in Marina Securities strictly because of his direct involvement in the unauthorized practice of law at issue in that case, and he has grossly misrepresented and misinterpreted our actions in that proceeding. We expressly hold that Daniel E. Schramek is not now, nor has he ever been, authorized to practice law in the state of Florida.

Conclusion
Florida has been a front-runner among the states in trying to develop various means to provide better access to the courts. We recognized a number of years ago that "it is our responsibility to promote the full availability of legal services," and that "[d]evising means for providing effective legal services to the indigent and poor is a continuing problem." The Fla. Bar v. Furman, 376 So.2d 378, 382 (Fla. 1979). Consequently, in Furman we directed the Bar to immediately begin a study to determine better methods for providing legal services. The fruits of that and other similar efforts have resulted in this Court's approval of a number of significant advancements in improving access to the courts. For example, we recently approved *987 a number of simplified forms in a variety of areas to assist individuals in pursuing certain remedies without the assistance of an attorney; we have attempted to develop alternative means to resolve disputes; and we are presently attempting to provide a better means to secure pro bono legal services to the poor. See, e.g., In re Amendments to Rules Regulating The Fla. Bar, 598 So.2d 41 (Fla. 1992); Rules Regulating The Fla. Bar  Approval of Forms, 581 So.2d 902 (Fla. 1991); In re Amendment to Fla. Rules Civil Proc., 563 So.2d 85 (Fla. 1990). In encouraging these developments to assure better access to the courts of this state, a primary responsibility of this Court is to define and regulate the practice of law to protect the public from "incompetent, unethical, or irresponsible representation." The Fla. Bar v. Moses, 380 So.2d 412, 417 (Fla. 1980). Although we have encouraged the development of low cost legal services to the public, the activities engaged in by Schramek have actually harmed efforts to enhance the availability of such services given the significant harm his "incompetent, unethical, and irresponsible" activities have imposed on the people he has attempted to serve.
Accordingly, we approve the referee's findings and conclude that Daniel E. Schramek, individually and d/b/a Schramek & Associates and The L.A.W. Clinic, Inc., has engaged in the unauthorized practice of law. By this opinion, we permanently enjoin Daniel E. Schramek, individually, d/b/a Schramek & Associates, d/b/a The L.A.W. Clinic, Inc., or in any other capacity from engaging in any activity constituting the unauthorized practice of law in the State of Florida, unless and until he becomes a member of the Florida Bar, including, but not limited to: (a) holding himself out to the public in such a manner that the public places some reliance on him to properly prepare legal forms; (b) advising individuals as to various legal remedies available to them and possible courses of action; (c) making inquiries and answering questions as to the particular forms that might be necessary, how best to fill out such forms, and how to present necessary evidence at any court hearing regarding such forms; (d) engaging in personal legal assistance; (e) having direct contact in the nature of consultation, explanation, recommendations, advice and assistance in the provision, selection and completion of preprinted legal forms; (f) suggesting, directing, and/or participating in the accumulation of evidence to be submitted with the completed forms; (g) giving advice and making decisions on behalf of others that require legal skill and a knowledge of the law greater than that possessed by the average citizen; (h) preparing pleadings, wills, living trusts, deeds, and any other legal documents for third parties; (i) completing forms or assisting in the completion of forms that are not simplified forms approved by this Court, except as allowed by Chapter 10, Rules Regulating The Florida Bar; (j) explaining legal remedies and options to individuals that affect their procedural and substantive legal rights, duties and privileges; (k) construing and interpreting the legal effect of Florida law and statutes for third parties; (1) giving legal advice to individuals or groups concerning the application, preparation, advisability, or quality of any legal instrument or document or forms thereof in connection with dissolution of marriage, alimony and modifications thereof, child support and modification thereof, the disposition of property inter vivos or upon death, including, but not limited to, trusts and wills, and any other legal proceeding or procedure; (m) advertising that Schramek or any of his agents or employees will give legal advice or perform legal services; (n) appearing in any Florida court, directly or indirectly, as a spokesperson or representative for litigants in any court proceeding; (o) asserting directly or indirectly that this Court has authorized him to practice law in the courts of this state; and (p) otherwise directly or indirectly through other persons or entities engaging in the practice of law in Florida.
In the event Schramek engages in any of the conduct enjoined herein, he will be found in indirect criminal contempt of the Supreme Court of Florida for the unauthorized practice of law in this State. Further, Schramek is ordered to pay the costs *988 of this proceeding. Judgment is hereby entered against Daniel E. Schramek, individually and d/b/a Schramek & Associates and The L.A.W. Clinic, Inc., in favor of the Bar in the amount of $4,932.23, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The invoice statement signed by C.S. includes the following disclaimer:

I, THE UNDERSIGNED, hereby understand that The L.A.W. Clinic, Inc. are NOT attorneys and have NOT GIVEN or implied giving me legal advice, concerning this matter. I understand my right to seek legal counsel, however, I choose to accept the legal assistance provided by The L.A.W. Clinic, Inc. and I hereby relieve the L.A.W. Clinic, Inc. or any Associate of The L.A.W. Clinic, Inc. from any liability arising from the outcome of this matter.
[2] See State v. Schramek, CRC9006637CFANO-K (Fla. 6th Cir.Ct. Apr. 18, 1991) (Judgment of Guilt).
[3] We note that section 607.011 was repealed effective July 1, 1990, and replaced by section 607.0302. Schramek's answer was filed in 1991. Consequently, section 607.011 was no longer in effect at the time Schramek filed his petition. Even in its original form, however, section 607.011 does not authorize the designated agent to practice law.