212 So.2d 770 (1968)
THE FLORIDA BAR, Complainant,
v.
Maurice WAGNER, Respondent.
No. 36570.
Supreme Court of Florida.
July 17, 1968.
*771 Walter A. Shelley, Daytona Beach, and Robert B. Kane, Tallahassee, for The Florida Bar, complainant.
Daniel L. Ginsberg, Harold Ungerleider, Miami Beach, Richard D. Bertone and Michael A. Pelle, No. Miami Beach, for respondent.
THORNAL, Justice.
In this disciplinary matter, the respondent, Maurice Wagner, a member of The Florida Bar was charged with violating the Canons of Professional Ethics by:
(1) Failing to make prompt disbursement of and accounting for trust funds in his custody as the result of his representation of clients in four negligence cases.
(2) Wrongfully failing and refusing to pay numerous items of medical expenses and expert witness fees in the same four cases.
In response to interrogatories the Bar specified that it claimed violations of Canon 11, Canons of Professional Ethics; Rule 1, Additional Rules Governing the Conduct of *772 Attorneys in Florida, and Article XI, Rules 11.02(3) (a) and 11.02(4), Integration Rule of The Florida Bar.
Respondent denied the allegations of the complaint. He asserted that all trust funds received on behalf of his clients had been properly disbursed pursuant to their instructions.
Each of the four cases involved alleged delays in disbursing the proceeds of settlements in negligence cases. In each case the client was paid his share almost immediately upon receipt of the money by Mr. Wagner. It is claimed that the lawyer retained portions of the proceeds of settlements for the purpose of paying doctors' bills and expert witness fees. The Bar then contends that he improperly delayed disbursing the funds to the embarrassment of his clients. It is asserted that this conduct reflected adversely on the reputation of the profession in the community, and particularly disturbed the otherwise harmonious relationship between the medical and legal professions.
The matter was referred to Hon. Paul E. Raymond as referee. After hearings which produced a record comprising 728 pages of testimony and 88 exhibits, the referee exonerated the respondent completely from any semblance of wrong in two of the cases. In the other two, he found that respondent did not promptly disburse funds to pay certain medical bills and an expert witness fee. The bills were ultimately paid but only after the current investigation was initiated, and even then, approximately 16-21 months after the lawyer received the funds for disbursement. The referee recommended a 30 day suspension and assessment of costs totaling $2,176.18. The Board of Governors filed a judgment in accord with the recommendations of the referee. The respondent Wagner petitions for review.
Canon 11, supra, provides in part:
"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."
Rule 1, supra, provides:
"1. To represent the interest of the client with undivided fidelity and to honestly and truly account to him for all funds received on his behalf, and on demand pay over to him all monies justly due him."
The provisions of the Integration Rule cited at the outset merely supplement the quoted Canons.
We have examined the briefs of the parties. They consist almost entirely of an exchange of views regarding the impact of the evidence and the weight that should be accorded various espects of it. In disciplinary matters, the ultimate judgment remains with this Court. However, the initial fact-finding responsibility is imposed upon the referee. His findings of fact should be accorded substantial weight. They should not be overturned unless clearly erroneous or lacking in evidentiary support. State ex rel. Florida Bar v. Bass, 106 So.2d 77 (Fla. 1958). In this instance the conclusions of the referee were particularly lucid, and, with approval, we quote from them in part, as follows:
"In this matter, there is no indication whatever of any commingling of funds, misappropriation of funds, fraud or dishonest treatment of a client, or tampering with or in any way interfering with the processes for the administration of justice. But the fulfillment of a lawyer's professional responsibilities, as contemplated by Article 11.02(3) (a) of the Integration Rule, is not necessarily established by a showing that such acts of misconduct have not been committed. Neither the law nor the profession should lose sight of the obligation of every lawyer to conduct himself in a manner which will cause laymen, and the public generally, to have the highest respect for and confidence in the members of the legal *773 profession. When a lawyer commits any act or conducts himself in such fashion as to cause criticism of the Bar, he thereby impairs the confidence and respect which the Bar generally should enjoy in the eyes of the public. Striving for such an honorable and respected public image is not for the personal aggrandizement of the individual members of the profession; it is to enable them properly and effectively to perform the services and discharge the responsibilities which are entrusted to us. Without the respect and confidence of the public, it is impossible for the profession to discharge its duties effectively and efficiently, which duties are graver now than ever before in history.
"It is in the light of such professional responsibilities that the conduct of the respondent must be tested here. "A lawyer who undertakes to assert and collect a personal injury claim for a client ordinarily and necessarily deals with a number of persons and agencies other than his client and the adverse party. The attorney does not prosecute his client's claim in a vacuum. During the course of investigating and preparing his client's case, the attorney must necessarily seek out witnesses of various kinds. In particular, his quest for evidence ordinarily leads him to treating physicians, hospitals, drug stores, and other persons and agencies who have rendered medical services to his client. He must necessarily confer with such parties and in many cases he must call upon them for testimony or other evidence. In addition, the attorney is often required to enlist the aid of experts and other witnesses who have not rendered such services to the client.
"The responsibilities of the attorney which arise as such relationships are established, and which come into focus upon the attorney's receipt of funds in settlement or payment of his client's claim, are not entirely defined and limited by the law of contracts. Quite apart from any legal duty on his part, the attorney has a professional duty to accomplish the disbursement of such funds in a matter which accords a proper regard and respect for the rights and legitimate expectations of his own creditors, as well as those of his client. Quite obviously, a lawyer may not arbitrarily, and in defiance of his client's instructions, see to it that all of his client's bills are paid in a manner that would destroy the trust and confidence essential to the attorney-client relationship. (ABA Op. 163, August 22, 1936) On the other hand, it is well known that the doctors and others who have rendered medical services to the plaintiff generally expect to have their bills taken into account when the proceeds of the plaintiff's claim are disbursed. Although the attorney may not be bound in a strictly legal sence to fulfill the expectations of such creditors in every instance, he nevertheless has an obligation to avoid conducting himself in a manner which misleads such creditors or which gives them reasonable cause to conclude that he has not given fair and due regard to their interests. If an attorney knows that such creditors look to him for payment, and if he has in fact retained funds with which to pay their bills, he should make every effort to persuade his client to permit him to make immediate payment of just and undisputed bills. * * *"
* * * * * *
"There is no satisfactory evidence that respondent informed the doctors and other creditors of his clients' instructions not to pay the bills and the reasons therefor. Moreover, the respondent was not justified, nor did he have any excuse for allowing bills to accumulate to be paid for several months at the end of the year as happened in many instances. Some delays were justified because of honest disputes as to the accuracy of a bill or because of delay in receiving the proceeds of a `medical pay' policy held by the client. But many of the delays were wholly unjustified. Such practices injure other lawyers, the profession, his clients, *774 and the respondent himself. That the respondent's practices have hurt him is shown by his own testimony that he cannot obtain cooperation from certain doctors and cannot, therefore, undertake many representations * * *.
* * * * * *
"The referee fully recognizes that in certain instances the respondent found himself in a dilemma in which his proper course was not entirely clear. An attorney certainly cannot be condemned for refusing to accomodate a physician, or any other creditor, who attempts to enlist the attorney's aid in extorting an unfair and excessive charge from his client. As stated above, however, the record clearly establishes several instances in which there was no dispute, and yet without any justification or excuse delayed making payment for several months.
"The respondent is 45 years of age, is married, and has four children. He has been engaged in the practice of law in Daytona Beach for 17 years. During that time, he has represented clients in approximately 475 negligence cases, representing plaintiffs in practically all of them. The fact that he is in this matter charged with misconduct in only four cases, and in only two of which has the referee found the charges sustained, must be considered in making any recommendation for disciplinary action. The referee doubts that reprimand, either public or private, would furnish a sufficient deterrent to the respondent from a repetition of the practices found unacceptable here, nor would it sufficiently express the disapprobation of the Bar to the public as well as the profession. On the other hand, the exaction of severe disciplinary action does not appear to be justified by these facts.
"It is, therefore, the recommendation of this referee that the respondent be suspended from the practice of law for the period of one month, and that he be required to pay the costs of this proceeding. If in the opinion of the reviewing authority, the referee's conception of the ethical principles involved here is too exacting, or if these principles are not sufficiently definite or widely understood by the lawyers, then a dismissal, or at most a private admonition, would seem to be in order. * * *"
We concur in the referee's "conception of the ethical principles involved". We do not feel that they are too exacting. However, in view of all of the circumstances it is our view that actual suspension from the practice for the suggested thirty day period is not necessary to accomplish discipline which is fair to the public, the profession and the lawyer involved. State ex rel. Florida Bar v. Dawson, 111 So.2d 427 (Fla. 1959). We think it sufficient to reprimand the respondent and warn him to be more circumspect with the handling of his accounts in the future. The filing of this opinion shall constitute such a reprimand and warning.
In addition the Bar recommended that respondent be required to pay the costs in the amount of $2,176.18. In view of the conclusions reached by the referee, we think it fair that only one-half the costs be borne by the accused lawyer. The respondent is therefore ordered to pay as his share of the costs the sum of $1,088.09 and a judgment for this amount is entered in favor of The Florida Bar.
It is so ordered.
CALDWELL, C.J., and THOMAS, ROBERTS and DREW, JJ., concur.