424 So.2d 734 (1982)
THE FLORIDA BAR, Complainant,
v.
Bernard Paul PETTIE, Jr., Respondent.
No. 61256.
Supreme Court of Florida.
November 4, 1982.
Rehearing Denied January 24, 1983.
John F. Harkness, Jr., Executive Director and Stanley A. Spring, Staff Counsel, Tallahassee, and David G. McGunegle, Bar Counsel, Orlando, for The Florida Bar, complainant.
Robert E. Morris of Morris & Rosen, Tampa, for respondent.
PER CURIAM.
This attorney-discipline proceeding is before the Court on the complaint of The Florida Bar. We have before us the report of a referee and respondent's petition for review thereof. This cause is an original proceeding pursuant to the Court's jurisdiction over the discipline of attorneys. Art. V, § 15, Fla. Const.; Fla. Bar Integr. Rule, art. XI, Rule 11.09.
The Bar's complaint against attorney Pettie charged him with violating Rule 11.02(3)(a) of Article XI of the Integration Rule of The Florida Bar and Disciplinary Rules 1-102(A)(3), 1-102(A)(4) and 1-102(A)(5) of The Florida Bar's Code of Professional Responsibility in that he was involved in a criminal conspiracy to import approximately 15,000 pounds of cannabis.
The referee made the following findings and recommendations:
"Findings of Fact as to Each Item of Misconduct of which the Respondent is charged: The respondent admitted the essential allegations of the complaint filed by The Florida Bar. The bulk of the testimony received went to matters in mitigation. After considering all of the pleadings and evidence before me, pertinent portions of which are commented on below, I find as follows:
*735 1. Respondent, BERNARD PAUL PETTIE, JR., is 42 years of age, received his law degree from the University of North Carolina, Chapel Hill, in 1964, and became a member of The Florida Bar in 1965.
2. Respondent at all times relevant to these proceedings was a member of The Florida Bar and was subject to the jurisdiction of the disciplinary rules of The Supreme Court of Florida. Although the respondent's prior address of record as of September 1980 was Indian River County, Florida, the activities involved herein occurred in Broward, Hardee and Manatee Counties, Florida, and by agreement the matter was heard in Polk County, Florida.
3. Beginning at an indefinite time in 1979, respondent slowly became involved in a criminal conspiracy to import approximately 15,000 pounds of cannabis. The conspiracy was headed by Theodore John DeLisi. During this period of time, respondent knowingly assisted the smuggling conspiracy by permitting meetings to occur in the conference room of his law office in Pompano Beach, Broward County, Florida.
4. Respondent, at the request of the conspirators, formed a corporation called Flying Fish of Indiana, Inc., a Florida Corporation, in September, 1979. The purpose of the corporation was to hold title to a DC-4 aircraft which was to be used in smuggling cannabis into the country, and also possibly for legitimate activities. The respondent knew of the proposed illegal use of the aircraft.
5. Respondent purchased a residence on behalf of the conspirators near Bradenton in Manatee County, Florida, upon the instructions of Mr. DeLisi and associates, understanding that the residence was to be used as a storage facility for cannabis that was ultimately imported on January 22, 1980.
6. On instructions from Mr. DeLisi and associates, the respondent knowingly aided the conspiracy by assisting in the purchase of a 1974 Ford truck, which vehicle was later seized by law enforcement officers on January 22, 1980, at Gardner, Hardee County, Florida, because of its use in a smuggling operation.
7. Respondent, in his Answer, denies the titling of a 1979 Ford Econoline Van in December 1979, knowing that it would be used in the smuggling operation. It should be noted that this is the only denial of any matter of substance by the respondent.
8. The respondent knowingly assisted the smuggling conspiracy by introducing Mr. DeLisi to a certain party, so that the DeLisi interests could arrange to land the aircraft on that party's property on January 22, 1980.
9. Respondent testified that he telephoned an Assistant State Attorney in Hardee County prior to January 22, 1980, but was unable to speak with the attorney.
10. On January 22, 1980, the landing of the smuggling aircraft occurred and was discovered in Gardner, Hardee County, and seized by law enforcement officials. Fifteen thousand pounds of cannabis were in the aircraft.
11. It is not clear to what degree respondent profited from his actions.
12. Approximately one week after January 22, 1980, respondent voluntarily requested a meeting with investigators of the Florida Department of Law Enforcement.
13. Roger Alcott is Field Counsel for the Florida Department of Law Enforcement and, by special appointment, special assistant to the State Attorney of the Tenth Judicial Circuit, and also in the Twelfth Judicial Circuit and the Nineteenth Judicial Circuit, and previously in the Third Judicial Circuit and also in the U.S. Northern District in the State of Florida. His duties involve the prosecution of major narcotics cases in the State of Florida. William Wolfe and Charles Guthrie are experienced officers of the Florida Department of Law Enforcement. These three gentlemen and the respondent all testified as to the substantial assistance rendered to the Florida Department of Law Enforcement by the respondent.
14. Subsequent to the initial meeting and continuously up to the present, respondent *736 has assisted the Florida Department of Law Enforcement in the identification, arrest and prosecution of the various conspirators involved. The assistance of the respondent has allowed the authorities to arrest approximately thirty subjects, many of whom have been convicted. Some cases are still pending, and other subjects are still at large. Large amounts of real and personal property have been seized and forfeiture proceedings are pending.
15. The respondent's cooperation has been complete, and has involved personal danger to himself. At one point respondent wore a "body bug" at the request of the Department.
16. The cooperation was such that the Department feels that there is a threat to respondent's personal safety, since some of the defendants are still at large. The Department has information from several sources indicating that a "contract" exists on Mr. Pettie's life and as a result of that he has been relocated outside the State of Florida and his whereabouts are not known to anyone outside the Florida Department of Law Enforcement.
17. From the beginning of February 1980 until approximately the end of that year, one of the Florida Department of Law Enforcement agents was in almost daily contact with Mr. Pettie concerning the case. Mr. Pettie's assistance was a material aid to the investigation, and in the opinion of Mr. Alcott the investigation could not have succeeded to the extent that it did, particularly as to the higher-ups in the organization, without the efforts of Mr. Pettie.
18. Essentially Mr. Pettie, other than to wind down his law practice and conclude matters, has not practiced law since his initial contact with the Florida Department of Law Enforcement.
19. No evidence was presented as to any prior problems with the respondent's ethical conduct. Respondent testified that, other than some routine matters which do not appear to be of significance, he has never had any grievance matters with The Bar.
20. Mr. Pettie presented various scrapbooks and recommendations which portrayed him as a busy and well-respected lawyer in his community.
21. The relationship with the DeLisi family began as legitimate representation of the group in civil matters not relating to any criminal conduct. Over a period of time it slowly moved into a situation in which the respondent should have known what he was doing, but chose to wear blinders. It then developed into the knowing assistance detailed above.
Recommendation as to whether or not the respondent should be found guilty: I recommend that the respondent be found guilty and specifically that he be found guilty of the following violations of his Oath as an attorney and Integration Rules:
Integration Rule 11.02(3)(a) on moral conduct or illegal conduct;
Disciplinary Rule 1-102(A)(3) Engaging in illegal conduct involving moral turpitude;
Disciplinary Rule 1-102(A)(4) Engaging in conduct involving dishonesty;
Disciplinary Rule 1-102(A)(5) Engaging in conduct that is prejudicial to the administration of justice.
Recommendation as to disciplinary measures to be applied: I recommend that the respondent be disbarred from the practice of law in Florida.
The facts of this case are relatively clear and undisputed. An appropriate recommendation is not, however, an easy matter. Absent the cooperation of Mr. Pettie with law enforcement authorities, his direct and knowing participation in serious felonies warrants disbarment.
It is undisputed that he rendered material and substantial assistance to law enforcement. He suffered financial loss and the substantial loss of his law practice as a result and incurred personal danger to himself. It was possible for law enforcement to penetrate the higher levels of a drug smuggling operation because of his cooperation.
*737 The Florida Bar has recommended that he be suspended for a period of one year with a separate rehabilitation proceeding after that period of time. The Bar recommendation takes into account his assistance to law enforcement officers, feeling that this assistance justifies such a recommendation. Presumably his assistance will be appropriately rewarded by the Florida Department of Law Enforcement by the nature of the prosecution or the lack of prosecution.
Should these matters be considered in mitigation in a proceeding of this nature, and, if so, to what extent? It would appear that attorneys have been of great assistance to drug traffickers in this State. Many have performed legal and lawful services. Many have gone a step further and have performed lawful services that they probably suspected were aiding a felony but chose not to open their eyes. Some lawyers have apparently then stepped over the line. Mr. Alcott stated the problem quite well in his testimony. Obviously law enforcement would favor a lighter discipline in order to encourage other attorneys who might be similarly situated to come forward.
I have considered the criteria set forth in The Florida Bar v. Pahules, 233 So.2d 130 (1970). I have concluded that, although it is appropriate and traditional that law enforcement might reward Mr. Pettie to whatever degree they see fit by refraining from prosecuting him criminally, there is a need to deter other attorneys who may be tempted to become involved in similar violations. I have therefore concluded that, commendable as his efforts on behalf of law enforcement have been, they cannot justify mitigation of disciplinary measures. Although his involvement may have occurred slowly and over a period of time, Mr. Pettie deliberately and knowingly engaged in criminal conduct."
Respondent raises five issues for our consideration but only two merit discussion. First, respondent argues that the referee's recommended findings that he violated Disciplinary Rules 1-102(A)(4) and 1-102(A)(5) are not supported by the evidence.[1] Disciplinary Rule 1-102(A)(4) prohibits, among other things, conduct involving dishonesty. The Bar claims that engaging in illegal conduct is ipso facto the same as engaging in dishonest conduct. We disagree. "Dishonesty" is defined as "disposition to lie, cheat or defraud; untrustworthiness; lack of integrity." Black's Law Dictionary 421 (5th ed. 1979). "Illegal," on the other hand, is defined as "against or not authorized by law." Id. at 673. The two concepts are not co-extensive. Much that is dishonest is not illegal; much that is illegal is not dishonest. The latter applies under the facts of the instant case. While it can certainly be said that respondent's activities in the criminal conspiracy were illegal, there was nothing in his participation in the five overt acts with which he was charged that approached lying, cheating, defrauding, or untrustworthiness. We hold that the referee was in error in his finding of guilt of violation of Disciplinary Rule 1-102(A)(4).
As for Disciplinary Rule 1-102(A)(5), conduct prejudicial to the administration of justice, The Bar likewise argues that engaging in illegal conduct by an officer of the court is ipso facto conduct prejudicial to the administration of justice. The Bar, however, has failed to cite any case law or other authority to substantiate its position and bald assertions on its part are not persuasive. One definition of "obstructing the administration of justice" defines the term as "hindering witnesses from appearing, assaulting process server [sic], influencing jurors, obstructing court orders or criminal investigations." Black's at 972. The term is not so broad as to include all conduct which is illegal but rather those activities, for example, more directly associated with "bribery of jurors, subornation of perjury, misrepresentations to a court or any other conduct which undermines the legitimacy of *738 the judicial processes." Polk v. State Bar of Texas, 374 F. Supp. 784, 788 (N.D.Tex. 1974). The recent case of an attorney theatrically appearing in the courtroom on a stretcher dressed in bedclothing is a prime example of conduct prejudicial to the administration of justice. See The Florida Bar v. Burns, 392 So.2d 1325 (Fla. 1981). The participation of the respondent in the five overt acts is not. The referee was also in error in his finding of guilt of violation of Disciplinary Rule 1-102(A)(5).
The referee properly found respondent guilty of violating The Florida Bar's Code of Professional Responsibility Disciplinary Rule 1-102(A)(3) and Rule 11.02(3)(a) of Article XI of the Integration Rule. Respondent asserts as his second major issue that the recommended discipline of disbarment is inappropriate, given the facts of the present case. We reluctantly agree. This Court has not hesitated in the past to impose the ultimate penalty when an attorney has transgressed the law. The Florida Bar v. Beasley, 351 So.2d 959 (Fla. 1977). Respondent's admitted participation in the five illegal acts is sufficient to sustain disbarment. However, as we have said in The Florida Bar v. Pincket, 398 So.2d 802 (Fla. 1981), "we believe that it is appropriate in determining the discipline to be imposed to take into consideration circumstances surrounding the incident, including cooperation and restitution." Id. at 803. While judgments must be fair to society and severe enough to deter others prone to like violations, they must also be "fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation." The Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970). The present case is clearly atypical in that respondent voluntarily initiated contact with law enforcement authorities, cooperated with those authorities, suffered severe economic loss, closed his law practice, admitted his wrong, and risked his life to help further the investigation. The referee concluded that while respondent's activities on behalf of law enforcement were commendable, they could not justify mitigation. We hold otherwise and properly take the above-mentioned actions into account in our determination of a just discipline. We conclude that, given the unique facts of the present case, a suspension of one year is appropriate.
The respondent, Bernard Paul Pettie, Jr., is suspended from the practice of law in this state for one year from the date of this opinion. Costs in the amount of $621.40 are hereby taxed against him.
It is so ordered.
ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
ALDERMAN, C.J., concurs in part and dissents in part with an opinion.
ALDERMAN, Chief Justice, concurring in part, dissenting in part.
While I concur that the peculiar circumstances of this case which are carefully outlined by the majority opinion justify a discipline of less than disbarment, I do not agree that a one-year suspension is sufficient. Under normal circumstances, misconduct such as respondent's would call for disbarment, and, in cases which have involved similar misconduct where these mitigating circumstances did not exist, we have not hesitated to impose disbarment. In spite of respondent's mitigating acts of voluntarily initiating contact with law enforcement authorities, cooperating with them, admitting his wrongs, and risking his life to help further investigation, I believe a one-year suspension is too lenient. I would suspend respondent from the practice of law in this state for three years.
NOTES
[1] Respondent does not contest the claim that he has engaged in conduct which is "illegal conduct involving moral turpitude," D.R. 1-102(A)(3), and conduct "contrary to honesty, justice, or good morals," Rule 11.02(3)(a) of the Integration Rule.