PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar and the report of the referee. We have jurisdiction. Art. V, § 15, Fla. Const.
The bar charged McLawhorn with violation of a disciplinary rule, conduct involving dishonesty, fraud, deceit, or misrepresentation, conduct that is prejudicial to the administration of justice, conduct that adversely reflects on his fitness to practice law, and failure to preserve the identity of funds and property of a client[1] arising from his representation of Diana Vann Cummings in a personal injury action.
The bar alleged that McLawhorn “led Ms. Cummings to believe that the expected recovery for her injuries would be approximately one million dollars ($1,000,000)” influencing her refusal to accept a $75,000 offer of judgment and a $100,000 settlement offer. Ms. Cummings ultimately received a jury award of $67,500. Because she had refused the timely offer of judgment of $75,000, costs in the amount of $2,500 were assessed against her.
The bar also alleged that after receiving a check for $65,000, the amount awarded Ms. Cummings minus the $2,500 in coste, McLawhorn mailed Ms. Cummings a disbursement sheet itemizing costs, expenses and fees. According to the disbursement *1340 sheet, the proceeds were to be distributed as follows: (1) respondent’s fees in the amount of $27,000; (2) costs paid by the respondent in the amount of $3,357.25; (3) outstanding costs due and owing in the amount of $6,992.56; (4) outstanding medical bills in the amount of $14,929.36; (5) $2,500 expert witness fee; (6) private investigator’s fee of $1,238.47; and (7) other expenses totaling $412.07. Ms. Cummings was to receive a balance of $8,570.29. Ms. Cummings endorsed the check after respondent agreed that the check would be deposited in an escrow account and that no monies would be withdrawn from the account unless both respondent and Ms. Cummings authorized a disbursement. McLaw-horn deposited the check into his escrow account and gave Ms. Cummings a copy of the deposit slip. Without Ms. Cummings’ knowledge or authorization and contrary to their agreement, McLawhorn later withdrew the $65,000 from the escrow account and deposited it into a money market account for which respondent had the sole signature authority.
The bar further alleged that although the judgment was sufficient to pay all obligations, McLawhorn sent a letter to Drs. Taxdal and Brackett stating that “the case went to trial in November, but the verdict was not sufficient to fully satisfy all outstanding financial obligations resulting from her accident and injuries, and further, we have only recently received any monies for distribution” and requesting a discount on the outstanding balance “so that all creditors receive some satisfaction on the account.”
It was also alleged that when McLaw-horn failed to pay Ms. Cummings’ medical bills, several of her medical providers began to make demands and file suit for the unpaid medical bills. Because Ms. Cummings had disagreed with the distributions, respondent refused to pay her medical bills until a point in time after she filed a grievance with The Florida Bar.
The referee made the following findings of fact:
that respondent’s statements to plaintiff’s fiancee (now husband) that “it was a million dollar case, no doubt”, which he subsequently related to plaintiff, apparently affected her unwillingness to accept offers of judgment of sums substantially less. That respondent made misrepresentations in a letter to doctors seeking reductions in their bills by stating that the “verdict was not sufficient to satisfy all outstanding financial obligations resulting from her accident and injuries”. The damages awarded were more than ample to satisfy all obligations.
That respondent also made misrepresentations regarding the judgment proceeds of $65,000.00, which were to be kept in escrow, but which were later placed in a different account in respondent’s name only without prior permission of the plaintiff. Such conduct creates distrust of the legal profession and gives the appearance of an effort to defraud plaintiff of monies belonging to her, even though the money was placed in a money market account. Such actions should not have been taken without her prior permission.
The failure of respondent to pay outstanding medical bills, resulting in a law suit and damages to plaintiff’s credit, was prejudicial to the administration of justice in her behalf. The evidence failed to show a genuine effort by respondent to protect his client from creditors he knew existed, or to persuade her to permit him to make immediate payment of undisputed bills. Respondent was told to pay certain of the bills but failed to do so for several months. The delay was unjustified.
The referee recognizes the inherent difficulties in attorney/client relationships, especially in matters dealing with the settlement of claims or obtaining a jury verdict satisfactory to the client. However, competent attorneys should possess the necessary skills and experience to effectively deal with such problems in a manner which does not adversely reflect upon the respect and confidence the public places in the legal profession. The over-all conduct of respon *1341 dent in the handling of this case does reflect upon his fitness to practice law.
The referee recommends that McLaw-horn be found not guilty of failure to preserve the identity of funds and property of a client. He recommends that McLawhorn be found guilty of: 1) violation of a disciplinary rule, 2) conduct seeking to defraud and mislead, 3) conduct prejudicial to the administration of justice, and (4) conduct that adversely reflects on his fitness to practice law. The referee further recommends McLawhorn receive a public reprimand with an appearance before the Board of Governors and be required to pay the costs of these proceedings.
McLawhorn challenges the referee’s findings of fact and recommendations as to guilt and discipline.[2] First McLawhorn argues that the referee’s finding that his statement to Cummings’, fiance apparently affected her unwillingness to accept the offers of judgment is not supported by clear and convincing evidence. Even assuming that the record does support this finding, a statement concerning the value of a claim made to a third party which might be relayed to a client, although clearly unwise, does not amount to a disciplinary violation.
Next McLawhorn claims that the finding that he made misrepresentations to Ms. Cummings’ doctors was not supported by the evidence. We disagree. It is clear from the record that at the time McLaw-horn advised Drs. Taxdal and Brackett that “the verdict was not sufficient to satisfy all outstanding financial obligations” he knew that there were ample funds to pay all creditors in full. We agree with the referee that such conduct was clearly misleading and highly improper. The fact that McLawhorn sought a reduction of the claims against his client is not in itself objectionable; however, the misleading manner in which he pursued this objective was a clear violation of Disciplinary Rule 1-102(A)(4) of the former Florida Bar Code of Professional Responsibility.
McLawhorn also challenges the referee’s finding that he made misrepresentations to Ms. Cummings regarding the judgment proceeds. We agree with McLaw-horn that the record does not support a finding of misrepresentation in connection with his handling of the judgment proceeds. However, the record does support the finding that McLawhorn transferred the funds without first seeking Ms. Cummings’ permission, although he was aware that she did not want the funds removed from what she believed to be a joint escrow account unless she authorized their removal. Under the circumstances, McLawhorn’s failure to explain to Ms. Cummings that it was advisable and advantageous to transfer the funds to an interest-bearing account and to seek her permission to do so adversely reflects on his fitness to practice law.
McLawhorn also argues that the referee’s finding that his failure to pay Ms. Cummings’ medical bills was prejudicial to the administration of justice is “not supported by the record or the case law.” We agree that McLawhorn’s refusal to pay his client’s medical bills cannot be considered prejudicial to the administration of justice. See The Florida Bar v. Wagner, 212 So.2d 770 (Fla.1968). In The Florida Bar v. Pettie, 424 So.2d 734 (Fla.1982), we discussed the type of conduct which is prohibited by disciplinary rule 1-102(A)(5) of the former Florida Bar Code of Professional Responsibility. There, we explained the term “obstructing the administration of justice” includes “those activities.... more directly associated with ‘bribery of jurors, subordination of perjury, misrepresentations to a court or any other conduct which undermines the legitimacy of the judicial processes.’ ” 424 So.2d at 737-38 (quoting Polk v. State Bar of Texas, 374 F.Supp. 784, 788 (N.D.Tex.1974)). Although we find no violation of DR 1-102(A)(5), we agree with the referee that this conduct adversely reflects upon McLawhorn’s fitness to practice law.
*1342 In The Florida Bar v. Wagner, 212 So.2d 770 (Fla.1968), conduct such as this was found to be improper. Wagner involved delays in disbursing settlement proceeds in two negligence cases. Upon receipt of the funds, Wagner had paid each client his share of the settlement but had retained portions of the proceeds for the purpose of paying doctors’ bills and expert witness fees. As in this case, Wagner failed to pay the bills until a grievance was filed against him. In Wagner we quoted extensively from the referee’s report, agreeing with the referee that upon receipt of judgment or settlement proceeds, an attorney who undertakes to assert and collect a personal injury claim, has a “ ‘professional duty to accomplish the disbursement of such funds in a [manner] which accords a proper regard and respect for the rights and legitimate expectations of his own creditors, as well as those of his client.’ ” Id. at 773. As recognized in Wagner, although an attorney who has retained funds with which to pay his client's bills may not, in defiance of his client’s instructions, see to it that those bills are paid, See ABA Op. 163, August 22, 1936, “he should make every effort to persuade his client to permit him to make immediate payment of just and undisputed bills.” 212 So.2d at 773. While we recognize that the respondent in this case was unsure of the proper course to be taken, his failure to actively seek the necessary approval from his client, when it was clear that she was being injured as a result of non-payment, adversely reflects on his fitness to practice law.
With the exceptions noted above we approve the referee’s findings of fact and find the respondent guilty of: 1) violating a disciplinary rule; 2) conduct seeking to defraud and mislead in connection with the letters to Ms. Cummings’ physicians; and 3) conduct that adversely reflects on his fitness to practice law in connection with his overall handling of this case. Although we do not find respondent guilty of conduct prejudicial to the administration of justice or any misrepresentation in connection with the judgment proceeds, we believe that a public reprimand with an appearance before the Board of Governors, as recommended by the referee, is proper in this case. Accordingly, the respondent, Donald McLawhom, is hereby ordered to appear before the Florida Bar Board of Governors within a reasonable time. Judgment in the amount of $1,357 is hereby entered against the respondent, for which sum let execution issue.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

. Disciplinary rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), and 9-102(A) of the former Fla. Bar Code Prof. Resp., respectively.

. We find McLawhorn’s claim that the referee “selectively enforced” the rules of evidence, thereby prejudicing his defense, to be without merit.