PER CURIAM.
This disciplinary proceeding is before us on a complaint of The Florida Bar and report of the referee. We have jurisdiction pursuant to article V, section 15, Florida Constitution.
GUILT
The Bar filed a five count complaint against Hallard J. Greer for various violations of the Code of Professional Responsibility between 1979 and 1984. Following a hearing, the referee made the following findings of fact:
Count I
In early 1981, Mr. and Mrs. Alexander Stefan entered into a contract with Mr. and Mrs. McGrath for the McGraths to purchase the Stefan’s home. The McGraths put down a non-refundable deposit of $4,000.00_ Due to problems with obtaining a free and clear title on the property the closing date was moved to June 1, 1981. At that time, the McGraths hired Richard Carr to represent them and the $4,000.00 deposit was placed in Mr. Carr’s law firm’s trust account.
... the McGraths failed to appear for the closing [and] the Stefans met with respondent and asked him to represent them in their efforts to retain the aforementioned $4,000.00.
On July 6, 1981, respondent wrote to Mr. Carr demanding the $4,000.00 on behalf of the Stefans.... Respondent failed to follow up on his letter to Mr. Carr.
On September 8, 1981, respondent received a check from Mr. Carr’s office in the amount of $1,000.00 made payable to Mr. and Mrs. Stefan and respondent_ Respondent did not deliver the check to the Stefans until December 1981. At the time respondent delivered the check to the Stefans he told them that he would continue to try and collect the remaining $3,000.00 from Mr. Carr. Respondent took no further steps to recover the money from Mr. Carr.
On May 18, 1982, respondent wrote to the Stefans and informed them that Mr. Carr was releasing the balance of the deposit money to the McGraths.... In January 1983, respondent told the Ste-fans to get a new lawyer to represent them and he returned the Stefan’s file to them.
Count II
In September 1982, Phillip Trimmer retained respondent to seek a reduction of Mr. Trimmer’s child support payments. On October 12, 1982, Mr. Trimmer executed a Motion to Modify Final Judgment which sought a reduction of his child support payments.... On November 3, 1982, respondent scheduled a hearing on the Motion to Modify Final Judgment for November 17, 1982. No hearing was held on that date. Subsequently, respondent failed to schedule any hearing on the Motion to Modify Final Judgment.
In September 1983, a hearing was held before Judge Sanderlin on Mr. Trimmer’s ex-wife’s Motion for an Order Sentencing Husband for Contempt. At the hearing, *1151 Judge Sanderlin reviewed the court file and asked respondent why no Petition to Reduce Child Support had ever been filed. Respondent replied that one had been filed and should have been in the court file. In spite of Judge Sanderlin’s statement that no petition or motion to reduce child support was in the court file, respondent failed to file a copy of his Motion to Modify Final Judgment.
In September 1983, Mr. Trimmer asked respondent to also file a Petition for Bankruptcy on his behalf. Subsequently, respondent told Mr. Trimmer that the Petition for Bankruptcy had been filed with the court, even though he knew that the petition had been returned by the bankruptcy court due to errors in the petition.
On November 29, 1983, Mr. Trimmer’s wife phoned the bankruptcy court and discovered that no Petition for Bankruptcy had been filed by respondent. Mr. Trimmer confronted respondent with this information and the next day respondent refunded the fee Mr. Trimmer had paid for the filing of the bankruptcy petition.
Respondent also represented Mr. Trimmer’s wife in her divorce action. On July 12, 1983, Peter Meros sent a letter to respondent outlining three options for Mrs. Trimmer to take in regard to her former marital home.... In August 1983, when Mrs. Trimmer returned from vacation and was made aware of the letter, she told respondent that she wished to exercise option No. 3 of the letter. Respondent stated that he would contact Mr. Meros and have the appropriate paperwork prepared. Respondent failed to follow through on the matter for Mrs. Trimmer. Subsequently, Mr. Meros filed a Motion to Terminate Exclusive Use and for Contempt. A hearing was held on the motion in November 1983 and Mrs. Trimmer did not attend because respondent told her she did not need to attend.
Count III
I find that The Florida Bar has failed to prove the allegations set forth in Count III of the Complaint.
Count IV
In May 1983, James Fish entered into an oral agreement with respondent whereby respondent would represent Mr. Fish in two medical malpractice cases. Subsequently, on September 19, 1983, respondent wrote a letter on behalf of Mr. Fish to one of the doctors demanding a $6,500.00 settlement in the matter.
On December 5,1983, a claims supervisor for the doctor's insurance carrier wrote a letter to respondent requesting medical records pertinent to Mr. Fish’s claim.... Respondent did not answer the aforementioned letter until January 31, 1984.
In February 1984, respondent was advised by the claims supervisor that there was no merit to Mr. Fish’s claim. Respondent was also advised that if no correspondence was received from him within thirty days that the insurance company planned to close the file. Respondent failed to submit any additional correspondence to the insurance company within the requested thirty day time period. In addition, respondent failed to inform Mr. Fish that the insurance company intended to close their file. In May 1984, pursuant to Mr. Fish’s request, respondent returned Mr. Fish’s records to him.
During the time respondent represented Mr. Fish, Mr. Fish wrote several letters to respondent seeking an update on the status of the matters being handled by respondent.... Respondent failed to respond to Mr. Fish’s inquiries.
Count V
In January 1979, respondent was representing Audrey Bright Tongel in her dissolution of marriage case. At that time, the attorney for Mrs. Tongel’s husband contacted respondent in reference to reaching a settlement in the case. Respondent agreed to pay Mrs. Tongel’s husband $1,000.00 in settlement of his claim for a special equity in the parties home. Mrs. Tongel never agreed to the $1,000.00 settlement nor did she autho *1152 rize respondent to agree to a $1,000.00 settlement on her behalf.
On February 5, 1979, respondent told Mrs. Tongel’s husband’s attorney that he would send a $1,000.00 check that week in settlement of the case. Mrs. Tongel had not authorized the respondent to issue a check in the amount of $1,000.00 on her behalf. Subsequently, respondent paid $1,000.00 to Mr. Tongel’s ex-wife’s attorney.
Greer argues that the referee's findings of fact were not supported by the evidence. We previously held that initial fact-finding responsibility in bar disciplinary proceedings is imposed on the referee and that his findings should be upheld unless clearly erroneous or lacking in evidentiary support. The Florida Bar v. McCain, 361 So.2d 700 (Fla.1978); The Florida Bar v. Wagner, 212 So.2d 770 (Fla.1968). We have reviewed the record and find that there is sufficient evidence to support the referee’s findings. While there are some inconsistencies in the version of events as presented by Greer and the version of events presented by the witnesses, the referee is in a better position to make determinations concerning a witness’s credibility because he is privileged to observe the witness’s demeanor while we are forced to review the cold transcript of the proceedings. Greer’s other contentions are without merit.
In accordance with the referee’s conclusions, we find Greer guilty of violating Disciplinary Rules 6-101(A)(3) (neglecting a legal matter); 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice); 1-102(A)(6) (engaging in conduct that adversely reflects on fitness to practice law); and 6-101(A)(2) (handling a legal matter without adequate preparation).
DISCIPLINE
As discipline for the above violations, the referee recommended that Greer receive a public reprimand followed by two years’ probation. As a condition of probation, Greer was required to successfully attend and pass a course on legal ethics given at an accredited law school and attain a passing score on the Professional Responsibility portion of the Florida Bar exam. The Bar argues that Greer should receive a ninety-one day suspension with proof of rehabilitation due to the cumulative misconduct in this case and because of his prior disciplinary record.
We agree that a prior disciplinary action may serve as the basis for the imposition of discipline harsher than that recommended by the referee. Greer previously received a public reprimand followed by one year of probation in The Florida Bar In re Greer, 343 So.2d 838 (Fla.1977), for violating several of the same ethical rules for which he was found guilty in the instant case. Consequently, we hereby suspend Hallard J. Greer from the practice of law for a period of sixty days followed by two years’ probation. As a condition of probation, Greer must successfully attend and pass a legal ethics course given at an accredited law school and attain a passing score on the ethics portion of the Florida Bar exam. Greer’s suspension shall be effective on May 8, 1989, thereby giving him time to close out his practice and take the necessary steps to protect his clients. Greer shall accept no new business from the date of this opinion and shall provide notice to his clients of this suspension. Costs in the amount of $6,522.02 are hereby assessed against Hallard J. Greer, for which sum let execution issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, shaw, barkett, GRIMES and KOGAN, JJ., concur.