PER CURIAM.
Jose Insua seeks review of the referee’s finding of guilt and recommended discipline in this matter. We have jurisdiction under article V, section 15 of the Florida Constitution.
The Florida Bar filed a complaint alleging that Jose Insua violated rules 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness) and 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. The complaint stemmed from Insua’s testimony as a government informant in the federal criminal trial of Alfredo Duran. Insua, who was admitted to the Bar in 1984, testified that on approximately twelve occasions during the years 1985-88 he brokered aircraft which were used to smuggle cocaine and marijuana into the United States. He also found pilots for the planes on two occasions, and on one occasion conspired to submit false documents to the Federal Aviation Administration. In 1988, Insua’s conduct was discovered and he was approached by FBI agents. Insua entered into a plea agreement with the U.S. Attorney’s office in which he agreed to plead guilty to one count of conspiracy and to cooperate as an informant.[1]
*1314 Insua testified at the disciplinary hearing that he became involved in criminal conduct through his family’s aircraft brokering business, not through his law practice. He stated that he had no actual knowledge that the planes were going to be used to smuggle narcotics, although in hindsight he should have realized it on at least three or four occasions. He also pointed out that since 1988 he has extensively aided the government as an informant — working undercover, wearing recording devices or body bugs more than 100 times, and testifying at numerous proceedings.
The referee found Insua guilty of violating rule 4 — 8.4(b), but found him not guilty of violating rule 4-8.4(c), “as such a finding would be duplicitous.” The referee recommended that Insua be disbarred.
Insua first argues that the Bar failed to prove the disciplinary violation by clear and convincing evidence and that the referee’s factual findings are not supported by substantial competent evidence. We reject this argument. Insua testified unambiguously under oath in federal court that he knowingly participated in a drug importation scheme on numerous occasions. The referee found that the Bar had proven In-sua’s knowing involvement in at least three or four smuggling incidents as well as in a marijuana importation scheme. This finding is supported by substantial competent evidence in the record, including Insua’s federal trial testimony and his testimony at the disciplinary hearing.
Insua next argues that disbarment is not the appropriate discipline in this case and that the mitigating factors justify a less severe punishment. In mitigation, Insua presented the testimony of his federal public defender, who stated that Insua was remorseful, was a good candidate for rehabilitation, was only a minor participant in the smuggling conspiracy, and had substantially assisted the government in various ongoing investigations. Insua also presented the testimony of his wife, his accountant, and a friend who was a private investigator. These witnesses testified that Insua was remorseful, and the latter two witnesses testified that they would continue to refer clients to Insua if he retained his license to practice law.
In aggravation, the Bar presented the testimony of two attorneys who were involved with Insua when he first began to practice law. One attorney, who shared office space with Insua in the summer of 1984, testified that Insua wrongfully obtained $1500 from this attorney’s client. He also testified that Insua once convinced a secretary to put his name on an appellate brief when he had nothing whatsoever to do with the case. Another attorney, a partner in a firm Insua worked for in 1984 or 1985, testified that Insua was fired from that firm when it was discovered he was running a phantom practice out of the office, accepting clients and fees that the firm knew nothing about. The Bar also presented evidence of Insua’s driving record, which reflected that he was cited for driving without a valid driver’s license in 1987 and 1988 and had failed to appear in court.
The offenses committed by Insua are extremely serious. This Court has stated on numerous occasions that an attorney’s involvement in the illegal drug trade warrants disbarment. See, e.g., The Fla. Bar v. Sheppard, 518 So.2d 250 (Fla.1987); The Fla. Bar v. Marks, 492 So.2d 1327 (Fla.1986); The Fla. Bar v. Hecker, 475 So.2d 1240 (Fla.1985). This case does not involve an isolated incident, but a series of transactions over a period of several years, from the time Insua was first admitted to the Bar to the time his conduct was discovered by federal authorities. While Insua’s extensive cooperation with the government since his conduct was discovered is a mitigating factor, this cooperation in and of itself is not dispositive on the issue of discipline, and we find that it carries insufficient weight here. See The Fla. Bar v. Nedick, 603 So.2d 502, 503 (Fla.1992) (“To excuse repeated, long-term criminal behavior once the behavior is exposed simply because a person cooperated with the authorities is contrary to the purpose underlying our system of Bar discipline.”); The Fla. Bar v. Eisenberg, 555 So.2d 353 (Fla.1989) (disbarring attorney involved in laun *1315 dering drug money despite his extensive cooperation as a government informant).
Insua argues that this case is comparable to The Florida Bar v. Pettie, 424 So.2d 734 (Fla.1982), where this Court rejected the referee’s recommended discipline of disbarment and instead suspended Pettie for one year for his involvement in a conspiracy to import marijuana. However, we specifically recognized in Pettie that the facts were "clearly atypical in that respondent voluntarily initiated contact with law enforcement authorities, cooperated with those authorities, suffered severe economic loss, closed his law practice, admitted his wrong, and risked his life to help further the investigation.” Id. at 738. Evidence was also presented that Pettie was a well-respected lawyer in his community. Id. at 736.
In contrast, Insua only began cooperating with the government when his illegal conduct was discovered and he was approached by federal authorities; nothing further of any significance was presented in mitigation. In fact, although Insua has not been formally disciplined previously, testimony at the hearing showed that he has been engaging in improper conduct from the time he was first admitted to the Bar. Further, the referee specifically found that Insua was “anything but remorseful” for his egregious conduct. We find this case distinguishable from Pettie and conclude that disbarment is warranted.
Accordingly, we approve the referee's findings and the recommended discipline. Jose Insua is hereby disbarred from the practice of law retroactive to March 12, 1992, the date Insua was temporarily suspended. Judgment for costs in the amount of $1915.59 is hereby entered against In-sua, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDonald, shaw, grimes, kogan and HARDING, JJ., concur.

. The Bar’s complaint was narrowly framed, based soley on Insua's sworn testimony at the federal trial.