PER curiam:.
We have for review the referee’s report regarding the unlicensed practice of law by Florida First Financial Group, Inc. (Florida First). We have jurisdiction. Art. V, § 15, Fla. Const.
The referee in his report summarized the events leading to the present proceeding:
A) On March 9, 1990, Reed Lienhart A/K/A Anthony Rossi, of the Florida First Financial Group, agreed to, and signed, a cease and desist affidavit.
B) In that affidavit the Respondent agreed not to hold himself out as an attorney in collection matters.
C) The cease and desist affidavit was executed by Lienhart individually and as Florida First Financial Group.
D) A petition against the unlicensed practice of law was filed by The Florida Bar against Respondents on September 27, 1995.
E) Respondents filed their answer on October 26,1995.
F) Undersigned Referee was appointed by the Supreme Court on January 2, 1996.
G) Trial in this matter was held on June 28,1996, with all parties being present and represented by counsel.
H) All of the aforementioned pleadings, attachments thereto, and exhibits received in evidence, and this report constitute the record in this case and are forwarded to the Supreme Court of Florida.
The referee made the following findings of fact based on the evidence presented at the hearing below:
I) At all times material, neither Reed Lienhart nor Terry Smith (Respondents) were members of The Florida Bar, and were not therefore licensed to engage in the practice of law in the State of Florida.
2) Respondents were employed by Florida First Financial Group, Inc.
3) Florida First Financial Group, Inc. agreed to a Cease and Desist Order on March 9,1990.
4) Respondent Smith had telephonic and personal contact with both Danny Lukic and Troy Viney.
5) Both Lukic and Viney were told by Smith he represented Cimarron Apartments and called himself Pete Wilson.
6) As Pete Wilson, Smith requested information to serve the parties with summons to be in Court on June 30, 1994.
7) Each individual was told they would pay legal fees and their wages would be garnished when they lost the case.
8) On June 29, 1994, the two individuals went to meet with Mr. Wilson who was supposedly held up in Court on a case.
9) At that meeting the amount owed by Lukic and Viney was negotiated down from its original amount to a lesser amount.
10) A promissory note, prepared by Wilson, was executed by Lukic and Viney for the amount agreed upon with the individual who in fact was Respondent Smith.
11) Respondent Lienhart, as Mike Steele, first had contact with Mr. Bronco on February 27, 1995, regarding a debt owed Sultenfuss Properties.
12) Subsequently, Mr. Bronco was contacted by Lienhart as Bill Williams on behalf of Mike Steele.
*277 13) That at all times Lienhart was in fact Mike Steele and Bill Williams.
14) Bronco was told by Williams that Steele was in Federal Court prosecuting a ease.
15) Williams referred to himself as counsel for Sultenfuss Properties.
Florida First takes issue with the above findings of fact, challenging the factual accuracy of the findings, particularly the “desk names” used by several Florida First employees. Our review of the record, however, indicates that competent, substantial evidence supports the findings and that any error in “desk names” was harmless — it is the conduct of the employees, not their fictitious names, that is the focus of our inquiry. See Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992) (“If findings of the referee are supported by competent substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee.”).
Based on the above findings of fact, the referee concluded that Florida First has engaged in the unlicensed practice of law:
It is evident from the testimony that both Respondents used similar methods and approaches in their attempts to collect money owed by all the witnesses. Their methods included the use of various names at different times but in each contact their recitations were consistent, they were representing a particular debtor.
These activities and methods are much like Florida Bar v. Fuentes, 190 So.2d 748 (Fla.1966). As the Supreme held in Fuentes, certain phrases and activities lead people to believe that a perqson is authorized to practice law. In this case the evidence of such activity is abundant.
Florida First objects to the referee’s conclusion concerning guilt, claiming that the caselaw relied on by the referee is inapposite. Florida First further alleges that the Bar has received relatively few complaints regarding Florida First’s practices and that the language used and conduct engaged in by its representatives was innocent. We disagree.
This Court in Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996), held that “[t]he party contending that the referee’s ... conclusions as to guilt are erroneous carries the burden of demonstrating that ... the record evidence clearly contradicts the conclusions.” Florida First has failed to meet this burden — the record is replete with evidence supporting the referee’s conclusion. Smith impliedly held himself out as counsel: He told Lukic and Viney that he represented Cimar-ron Apartments; he requested information to serve them with a summons; he told them they would be liable for legal fees and would have their wages garnished; and when Lukic and Viney went to meet with Smith, they were told he had been held up in court on a case. Lienhart flatly held himself out as counsel: He referred to himself as counsel for Sultenfuss Properties. Accordingly, we approve the referee’s conclusion concerning guilt.
We find that respondents (i.e., Florida First Financial Group, Inc., and Reed Lien-hart, a/k/a Anthony Rossi, a/k/a Mike Steele, as principal and director of Florida First Financial Group, Inc., and individually, and Terry Don Smith, a/k/a Pete Wilson, individually) have engaged in the unauthorized practice of law. By this opinion, we permanently enjoin Florida First Financial Group, Inc., and Reed Lienhart, a/k/a Anthony Ros-si, a/k/a Mike Steele, as principal and director of Florida First Financial Group, Inc., and individually, and Terry Don Smith, a/k/a Pete Wilson, individually, from engaging in any activity constituting the unauthorized practice of law in the State of Florida, including but not limited to the following: either impliedly or expressly holding themselves out to be lawyers authorized to practice law in the State of Florida[1]; advising others of their rights, duties, or obligations under Florida or federal law[2]; advising others of the legal consequences of their actions or inactions under Florida or federal law[3]; giv *278 ing legal advice and making decisions on behalf of others that require legal skill and a knowledge of the law greater than that possessed by the average citizen[4]; or otherwise engaging in the practice of law in Florida until such time as respondents are duly licensed to practice law in this state.
Should any of the respondents (i.e., Florida First Financial Group, Inc., and Reed Lien-hart, a/k/a Anthony Rossi, a/k/a Mike Steele, as principal and director of Florida First Financial Group, Inc., and individually, and Terry Don Smith, a/k/a Pete Wilson, individually) engage in any of the conduct enjoined herein, they will be found in contempt of the Florida Supreme Court for the unauthorized practice of law in this state. See, e.g., Florida Bar v. Schramek, 616 So.2d 979 (Fla.1993). Judgment for costs in the amount of $1,854.80 is entered in favor of The Florida Bar against Florida First Financial Group, Inc., and Reed Lienhart, a/k/a Anthony Ros-si, a/k/a Mike Steele, as principal and director of Florida First Financial Group, Inc., and individually, and Terry Don Smith, a/k/a Pete Wilson, individually, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.

. Florida Bar v. Warren, 655 So.2d 1131, 1132 (Fla.1995).

. Id.

. See generally id.; Florida Bar v. Schramek, 616 So.2d 979, 987 (Fla.1993).

. Warren, 655 So.2d at 1132.